IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SCOTT MCCLEARY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> _____Defendant._____ ) | 6:16-CV-01848-JO <br><br> OPINION AND ORDER |

JONES, District Judge,

Plaintiff Scott McCleary appeals the Commissioner's decision denying his concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

McCleary alleged disability beginning February 1, 2012, due to pain in the back, hip, and right knee. Admin. R. 23, 165, 172, 180, 223. The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found McCleary's ability to perform basic work activities adversely affected by obesity, mild degenerative disc disease in the lumbar spine, osteoarthritis in

the right hip, and migraines. Admin. R. 26. The ALJ found that, despite these impairments, McCleary retained the residual functional capacity ("RFC") to perform a range of light work with limited climbing, limited postural activities such as balancing, stooping, kneeling, and so forth, and not even moderate exposure to workplace hazards. Admin. R. 27.

The vocational expert ("VE") testified that a person having McCleary's age, education, work experience, and RFC could perform the activities required in light, unskilled occupations such as electronics worker, assembler of electrical accessories, and bench assembler, which represented approximately 245,000 jobs in the national economy. Admin. R. 30, 57-58. The ALJ concluded that McCleary was not disabled within the meaning of the Social Security Act. Admin. R. 31.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence, even if another interpretation is also rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039 –40 (9th Cir. 1995).

\\\

\\\

## ASSIGNMENTS OF ERROR

The plaintiff bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). McCleary contends the ALJ improperly evaluated his subjective symptoms and the opinion of orthopedic surgeon Craig Mohler, M.D. McCleary contends these errors led the ALJ to elicit testimony from the VE based on assumptions that did not accurately reflect his functional limitations and to erroneously conclude that he was not disabled.

## DISCUSSION

### I. Subjective Symptoms

In his application, McCleary alleged that he suffered back pain, leg pain, and hip pain since being hit by a car while walking in 1994. Admin. R. 196, 222. He alleged these impairments worsened gradually until they became disabling in February 2012. Admin. R. 197. He said he could not work due to constant pain in the back, hip, and right knee. Admin. R. 223. He could walk about two blocks before he needed to stop and rest. Admin. R. 228.

At the administrative hearing, McCleary testified that limitations in his ability to move due to back and joint pain prevented him from working. His hip pain was gone after hip replacement surgery in June 2014. His migraines, which he had experienced since long before the alleged onset of disability, were controlled by medication. Admin. R. 47, 49. He said he could comfortably lift 40 to 50 pounds, but carrying as little as five pounds was difficult. McCleary said he could walk about one and a half blocks without pain, but had to stop to rest for a few minutes every block or two. Admin. R. 46-47.

\\\

The ALJ accepted that McCleary's obesity, mild degenerative disc disease in the lumbar spine, osteoarthritis in the right hip, and migraines adversely affected his ability to perform basic work activities. Admin. R. 26. She found, however, that McCleary failed to show that his pain was so intense and persistent that it precluded him from engaging in work requiring light exertion with limited climbing, postural activities, and exposure to workplace hazards. Admin. R. 27.

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must evaluate the severity, persistence, and frequency of the subjective symptoms. The ALJ is not to engage in wide-ranging scrutiny of the claimant's character, but to focus on the intensity and persistence of his symptoms. *Treviso v. Berryhill*, 862 F.3d 987, 1000 n.5 (9th Cir. 2017); Social Security Ruling (SSR) 16-3p *available at* 2016 WL 1119029 (2016).

A determination that the claimant's symptoms are less debilitating than subjectively claimed must include specific findings supported by substantial evidence and a clear and convincing explanation of the ALJ's reasoning. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's statements. *Tommasetti v. Astrue*, 533 F.3d at 1039.

In making findings about the severity of subjective symptoms, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements about his symptoms. *Tommasetti* at 1039; *Smolen*, 80 F3d at 1284.

The ALJ's decision demonstrates that she performed a thorough review of all the evidence relating to proper factors for evaluating the intensity, persistence and limiting effects of McCleary's symptoms. She discussed the objective medical evidence and found it did not support the degree of limitation McCleary alleged. The absence of medical evidence cannot be the sole basis for discrediting subjective symptoms, but remains a proper factor in assessing the severity, intensity, persistence, and limiting effects of subjective symptoms. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

With respect to McCleary's hip pain, the objective evidence showed severe osteoarthritis initially, before hip replacement surgery, but no basis for limitation afterwards. In April 2014, diagnostic imaging showed advanced osteoarthritis in the right hip with bone on bone articulation. Admin. R. 310. In June 2014, Craig Mohler, M.D., performed a hip replacement without complications. When Kyle Homertgen, D.O., saw McCleary for a follow up ten days later, McCleary was ambulating with crutches and said his pain was improving. Admin. R. 315. Three months post op, McCleary denied hip pain, walked without a limp using a cane for balance, and had only a slight limp without the cane. Admin. R. 298. At the administrative hearing, McCleary testified that, after his hip replacement, the pain was gone from the hip. Admin. R. 47.

With respect to his low back pain, diagnostic imaging in August 2013 showed mild narrowing of the L5-S1 disc space, with all other disc heights normal. Lumbar alignment was normal and there were no vertebral compression fractures. Admin. R. 274. Andrea Marshall, D.O., performed a physical examination in which McCleary moved, sat, removed his shoes, and got on and off the examination table without difficulty. His tandem gait, toe walking, and squatting were within

normal limits. He had a normal straight leg raise while seated and good motor strength. He had subjective pain while heel walking, hopping, and doing supine leg raises. Dr. Marshall believed these objective findings suggested McCleary could stand and walk for up to six hours, sit without limitation, lift and carry 50 pounds frequently, and engage in frequent postural activities. Admin. R. 270-273. In August 2014, McCleary told Dr. Homertgen that he had increased back pain after hip replacement surgery, but Dr. Homertgen's findings were generally within normal limits except that McCleary was morbidly obese. Admin. R. 314-315, 392. Over the ensuing months, McCleary continued to complain of non-radiating back pain, but Dr. Homertgen's examinations found little in the way of objective findings, other than a decrease in lumbar range of motion and obesity. Admin. R. 313, 342, 392. In June 2015, an MRI of the lumbar region of the spine showed mild degenerative changes without disc herniation or spinal stenosis. Admin. R. 395. In September 2015, further diagnostic imaging showed mild to moderate facet arthropathy at L4-L5 and L5-S1, but McCleary's spine maintained normal lumbar alignment, vertebral body heights, and disc spaces. Admin. R. 387. After viewing the diagnostic imaging, a neurosurgical consultant declined to offer treatment. Admin. R. 396.

Similarly, with regard to McCleary's knee pain, at her examination in August 2013, Dr. Marshall obtained diagnostic imaging that showed no significant degenerative changes or other abnormality. Admin. R. 275.

The ALJ could reasonably expect the disabling limitations McCleary claimed to be reflected in significant objective findings. McCleary's medical records include only mild objective findings which support the ALJ's assessment of his subjective symptoms. *Lingenfelter*, 504 F.3d at 1040; *Burch*, 400 F.3d at 681; *Morgan*, 169 F.3d at 600.

The ALJ also considered McCleary's treatment record which showed there were large gaps during which McCleary did not require treatment. Admin. R. 28. An unexplained or inadequately explained failure to seek treatment is a proper factor in assessing a claimant's subjective symptoms, including the extent to which the claimant was in pain. *Burch*, 400 F.3d at 681, *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, McCleary alleged disability beginning in February 2012, but did not seek treatment for any of his allegedly disabling symptoms until February 2014. Admin. R. 28, 283. An ALJ can reasonably expect a claimant with disabling pain to require treatment and infer from large gaps in treatment that the claimant's pain level was less than debilitating. The type of treatment a claimant receives is also a proper factor in assessing the severity of subjective symptoms. *Burch*, 400 F.3d at 681; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). McCleary's treatment history shows that, with the exception of hip replacement surgery, he received very conservative treatment limited to medication, physical therapy, and weight loss counseling.

The ALJ also found that McCleary's most limiting symptoms were improved with treatment. Admin. R. 26, 28-29. Impairments that are effectively controlled by medication or other treatment are not disabling. *Tommasetti*, 533 F3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). As noted previously, hip replacement surgery relieved McCleary's hip pain. Admin. R. 47, 297, 299, 314. McCleary also alleged he had suffered from migraines for years before he became unable to work. The ALJ noted that McCleary said Imitrex effectively relieved his symptoms. Admin. R. 29, 342-343.

The ALJ also relied on McCleary's reported daily activities in assessing his subjective symptoms. Admin. R. 26. When a claimant engages in daily activities that are inconsistent with his

asserted limitations, an ALJ may properly draw an adverse inference as to the asserted limitations. *Molina v. Astrue*, 674 F.3d 1103, 1112-1113 (9th Cir. 2012); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that, even before hip replacement surgery, McCleary was independent in personal care, washed dishes, cleaned floors, did yard work, picked up cans and bottles to earn cash, mowed lawns, performed repairs, went fishing and took walks. Admin. R. 26, 224-227. After recovering from surgery, McCleary reported walking around town to get exercise. Admin. R. 50. In August 2014, he reported walking two miles a day. Admin. R. 314. While these activities are not equivalent to full time work, the ALJ could reasonably infer that they were inconsistent with the totally debilitating pain that McCleary claimed.

The ALJ also considered the opinions of consultative examiners. Admin. R. 28. As noted previously, even before hip replacement surgery, Dr. Marshall examined McCleary and obtained findings that led her to opine that he could stand and walk for up to six hours, sit without limitation, lift and carry 50 pounds frequently, and engage in frequent postural activities. Admin. R. 270-273.

The ALJ's evaluation of McCleary's subjective symptoms is supported by inferences reasonably drawn from the record. The decision provides an adequate basis for the court to conclude that the ALJ did not discredit McCleary's subjective statements arbitrarily. The ALJ provided a clear and convincing explanation that is supported by the record. *Tommasetti*, 533 F.3d at 1039; *Batson*, 359 F.3d at 1193; *Thomas*, 278 F3d at 958.

## II. Dr. Mohler's Opinion

As described previously, Dr. Mohler performed hip replacement surgery without complications in June 2014, and McCleary reported that his hip pain was gone at his three month follow up in August 2014. Admin. R. 29, 297, 302-303. During the interim, on July 17, 2014, Dr.

Mohler completed a Residual Functional Capacity Questionnaire indicating that pain and stiffness following McCleary's hip replacement surgery would require him to take frequent unscheduled breaks, limit his standing and walking to five minutes at a time, limit sitting to fifteen minutes at a time, interfere with attention and concentration, cause frequent absences from work, and preclude him from working a full time schedule. Admin. R. 277-278. The ALJ gave Dr. Mohler's questionnaire little weight in assessing McCleary's RFC. Admin. R. 29.

An ALJ may discount the opinion of a treating physician that is contradicted by another doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected for clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas*, 278 F3d at 956-57.

Here, the ALJ did not say Dr. Mohler's opinion was wrong, she simply found that his questionnaire responses described McCleary's limitations before he had fully recovered from hip replacement surgery. Admin. R. 29. The ALJ found that Dr. Mohler's later treatment notes, other medical evidence, and the record as a whole showed that McCleary continued to improve after Dr. Mohler completed his questionnaire in July. Admin. R. 29. This conclusion is supported by McCleary's own statements indicating his hip pain was gone after his hip replacement, medical records of his recovery showing that he weaned off of oxycodone and off of reliance on a cane, and his ability to engage in a wide range of activities, including the ability to walk for miles on a daily basis, within a few months after surgery. Admin. R. 29, 46, 50, 51, 297, 299, 314, 342.

\\\

\\\

The ALJ's reasons for giving Dr. Mohler's opinion diminished weight in assessing McCleary's RFC are clear and convincing and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d at 1216.

### III. Step Five Determination

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the functional limitations of the claimant can perform. *Yuckert*, 482 US at 141-42; 20 C.F.R. §416.920(g). The ALJ can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043. Here the ALJ elicited testimony based on hypothetical assumptions reflecting the limitations in McCleary's RFC assessment. Admin. R. 56-57.

McCleary contends the ALJ's hypothetical assumptions did not accurately reflect all of his limitations because the ALJ did not include the limitations from Dr. Mohler's questionnaire. The ALJ properly evaluated Dr. Mohler's questionnaire and excluded limitations that she found unsupported by the record as a whole. An ALJ is not required to incorporate additional limitations she found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989).

McCleary's additional argument, that the jobs identified by the VE required exposure to workplace hazards contrary to McCleary's RFC assessment has no merit. The job descriptions in the *Dictionary of Occupational Titles* do not indicate that any of the three jobs require exposure to workplace hazards.

\\\

\\\

## CONCLUSION

The ALJ properly evaluated all the evidence and reached rational conclusions based on inferences reasonably drawn from the record as a whole. Even if the evidence in this case record could be interpreted differently, in a manner more favorable to McCleary, the court is not free to overturn an ALJ's factual determinations on the basis that "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1193.

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this 16th day of November, 2017.

Robert E. Jones
United States District Judge